BRIAN D. LYNCH
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2155
Tacoma, WA 98402

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>WALTER WILLIAM COPLAND,<br><br>Debtor. | Case No. 09-47782 |
| BONNIE ANTHIS, individually, and as Personal Representative of the Estate of Harvey Allen Anthis,<br><br>Plaintiffs,<br><br>v.<br><br>WALTER WILLIAM COPLAND, an individual,<br><br>Defendant. | Adversary No. 09-4192<br><br>**MEMORANDUM OPINION** |

Plaintiff Bonnie Anthis, personally and as representative of the Estate of Harvey Anthis, obtained a judgment against Defendant Walter William Copland ("Copland") in Benton County Superior Court in connection with the shooting death of her husband Mr. Harvey "Al" Anthis. Mr. Copland thereafter filed a chapter 7 bankruptcy, Case No. 09-47782. Mrs. Anthis filed this adversary proceeding against Defendant Copland to determine dischargeability under 11 U.S.C. § 523(a)(6). Trial was held on September 15, 2010, five years to the day from the date of Mr. Anthis's death. The Court determines that Mr. Copland intentionally shot and killed Mr. Anthis, that the shooting was willful

MEMORANDUM OPINION - 1

and malicious, and that the debt Mr. Copland owes to Mrs. Anthis is not dischargeable, pursuant to § 523(a)(6).[1]

## I. TESTIMONY PRESENTED

Mr. Copland is a retired police officer from the City of Tacoma Police Department. He spent a lot of time in Kennewick, Washington, where his son lived. Mr. Copland became acquainted with John Stevens, who lived across the street from Mr. Copland's son, and with Mr. Stevens's longtime friend Al Anthis. On September 15, 2005, Mr. Stevens and Mr. Copland were together during the day, including a visit to the Burbank Tavern in nearby Walla Walla County, and returned to Mr. Stevens's house in the afternoon where they met up with Mr. Anthis. On his way to the Stevens' house, Mr. Copland stopped to purchase whiskey and vodka. The three men hung out on the deck at Mr. Stevens's house that afternoon, talking about upcoming fishing trips, drinking and eating around a four to five foot hexagonal table on the deck.

Mr. Copland did not testify and was not present at trial, as he was previously convicted of first degree manslaughter and is serving time in prison. Mr. Stevens, the only witness to the events of September 15, 2005 besides Mr. Copland, did testify. Sometime that evening, in a sequence of events stunning both in their rapidity and unexpectedness, Mr. Stevens recalls Mr. Copland saying to Mr. Anthis "I could shoot and kill you." Mr. Stevens heard Mr. Anthis respond "bring it on." Mr. Copland then got up from his stool, walked behind Mr. Stevens and around the table up to Mr. Anthis, pulled out what is described as a .22 derringer, placed it up to Mr. Anthis's right temple and fired. Mr. Stevens recalled no argument before that. Mr. Stevens saw the flash of the shot, heard the shot and at that point saw that Mr. Copland was holding the gun. He did not see Mr. Copland pull the gun or the trigger and saw no movement by Mr. Anthis before the shot. Mr. Anthis instantly fell off his bar stool to

---

[1] This Memorandum Opinion shall constitute the court's findings of fact and conclusions of law in support of the Order and Judgment. The court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

MEMORANDUM OPINION - 2

Case 09-04192-BDL    Doc 50    Filed 09/23/10    Ent. 09/23/10 15:13:31    Pg. 2 of 5

the floor. Mr. Copland then returned to his seat, put the gun in his back pocket, and placed his head in his hands, saying "Oh, my God, I've killed Al."

When Kennewick police arrived, Mr. Stevens and Mr. Copland were together, still on the back deck at Mr. Stevens's house. Mr. Stevens was on the phone with the 911 operator. After Mr. Copland was handcuffed, he told Officer Joshua Kuhn after Officer Kuhn removed the gun from Mr. Copland's pocket, "I'm sorry. I killed him. He's dead." When Officer Wayne Meyer checked Mr. Anthis's vital signs, and thought he felt a pulse, Mr. Copland said, "No. He's dead. I killed him." The next morning, talking to then-Sargent Sharon Felton, the duty officer at the jail, Mr. Copland told her that he could not call Mr. Stevens for a phone number, saying "That's cold. I can't call him. I just shot and killed our best friend." Detective James Kraft talked to Copland at the hospital when his blood was drawn, and took a statement later at the jail. Detective Kraft found no difficulty talking to Mr. Copland, and Mr. Copland was able to tell Det. Kraft what he had done the whole day up to the events at the Stevens' house.

## II. **CONCLUSIONS OF LAW**

### 1. **Willful Injury**

Section 523(a)(6) provides that a discharge under § 727 does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another…" 11 U.S.C. § 523(a)(6). In the Ninth Circuit, the malicious injury requirement is analyzed separately from the willful injury requirement. *Jett v. Sicroff (In re Sicroff),* 401 F. 3d 1101, 1105 (9th Cir. 2005). The creditor bears the burden of establishing the required elements by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

A "willful" injury is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 US 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998). The actor must intend "the consequences of the act, not simply the act itself." *Id.* The Ninth Circuit applies a subjective standard for determining willfulness, requiring a subjective intent to harm or a
MEMORANDUM OPINION - 3

subjective belief that harm is substantially certain. *Carrillo v. Su (In re Su)*, 290 F. 3d 1140, 1145 (9th Cir. 2002).

Here the direct and circumstantial evidence of Mr. Copland's intent to injure Mr. Anthis by shooting him was compelling. Mr. Copland stated prior to the shooting that he could shoot Mr. Anthis, walked around a five foot table to do the shooting, acknowledged afterwards that he had done so and maintained possession of the gun at all times. There was no scuffle with Mr. Anthis which could demonstrate accident or self-defense. And especially compelling was the absence of any statement by Mr. Copland to Mr. Stevens or any of the officers immediately after the shooting suggesting something other than an intentional homicide.

Mr. Copland contended that the evidence showed the shooting was an accident or that he was not conscious that he had pulled the trigger due to his state of inebriation (a blood alcohol test taken approximately three hours of the shooting registered a BAC of .19), relying on statements made to various law enforcement officers some time after the shooting about not meaning to kill Mr. Anthis and not remembering what happened. He argued that there was no testimony by anyone who actually saw the trigger pulled, nor was there any direct evidence regarding his intent. However, the court is not limited to taking the debtor's representations as to his or her state of mind; "the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *In re Su,* at 1146 n. 6.

Mr. Copland cites to *FCC National Bank v. Roberts (In re Roberts)*, 193 B.R. 828 (Bankr. W.D. Mich. 1996) in arguing that intent cannot be decided if the debtor/defendant hasn't testified. The issue considered in *Roberts* was whether a default judgment could be entered on a creditor's complaint alleging non-dischargeability under Section 523(a)(2) for actual fraud in applying for a credit card. The pro se debtor failed to appear at the hearing. But the court found there was no basis to enter the judgment because the creditor bank had failed to present any evidence of intent, putting forth only argument instead. It did not rely upon the lack of debtor's testimony. Here, Mrs. Anthis presented substantial evidence at the hearing. This Court can determine Mr. Copland's intent to injure Mr. Anthis

MEMORANDUM OPINION - 4

from both the direct and circumstantial evidence presented and determines that Mr. Copland acted willfully.

### 2. Malicious Injury

For the second prong of Section 523(a)(6), "[a] 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *In re Su*, 290 F.3d at 1146-47 (*quoting Petralia v. Jercich (In re Jercich),* 238 F.3d 1202, 1209 (9th Cir. 2001)). Here, Mr. Copland's shooting of Mr. Anthis is clearly wrongful and resulted in the necessarily-caused injury of Mr. Anthis's death. As discussed above, it was also done intentionally. Mr. Copland has presented no just cause or excuse for his actions, nor is there any evidence that supports such a finding. As such, Mr. Copland's actions were also malicious. *See Montgomery v. Herring (In re Herring)*, 193 B.R. 344, 352 (Bankr. S.D. Ala. 1995) (noting malice may be inferred from the use of a deadly weapon); *Gunter v. Morton (In re Morton)*, 100 B.R. 607,611 (Bankr. N.D. Ga. 1989) ("shootings which are not accidental and not in self-defense are generally deliberate and malicious").

### III. CONCLUSION

Mr. Anthis's death was senseless and proves again that firearms and alcohol do not mix. Mr. Copland's debt to Mrs. Anthis arises from a willful and malicious injury and is not dischargeable pursuant to § 523(a)(6). Judgment will enter consistent with this decision.

Brian D. Lynch
United States Bankruptcy Judge
(Dates as of Entered on Docket date above)

_____
Hon. Brian D. Lynch
United States Bankruptcy Judge